Case number 16-5256, American Institute of Certified Public Accountants Appellant v. Internal Revenue Service et al. Mr. Cox for the appellant, Mr. Rothenberg for the appellees. Mr. Rothenberg for the appellant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the applallant, Mr. Rothenberg for the appellant, Mr. Rothenberg for the appointee. and satisfy the test on that ground as well. The second question, is the rule unlawful? The answer is, again, yes, and the rule should be vacated. Mr. Cox, which is the easier way for us to find, if we were to find standing, which is the easier way? Your Honor, I like easiness. The Court has already found standing, but I think the easier way to do standing in a zone of interest is on the employer ground. This Court said in Amgen Why is that easier? This Court said in Amgen that regulated parties routinely satisfy the zone of interest. We are regulated parties because we employ unenrolled preparers who now face a new regulatory regime. And the reason why that's easier, Your Honor, is that there can be no dispute that we have standing as employers. There's no dispute under Amgen that as regulated parties, we satisfy the zone of interest test. We also satisfy it other ways, but to answer your question, what's easiest, it's the standing as employers. And give me, summarize that argument for me. Yes, Your Honor. What is it about being an employer that gives you standing here? What's the harm? The harm, Your Honor, again, there are many harms, but the harm as employers is this. Since 1959, under a regulation that the IRS adopted through notice and comment rulemaking, unenrolled preparers have had limited representation rights in front of the IRS. ISCPA members who employ unenrolled preparers can use those people and enjoy those limited representation rights. The new rule takes them away. Now, to be sure, you can get them back again under the new rule if you submit to a much broader, more intrusive, and more coercive regulatory regime. But that's just making people pick their poison. So it remains the case that because we employ unenrolled tax preparers and they are the subject of the rule, that we are regulated thereby and we have standing and satisfied the zone of interest test. And again, I would point you to Amgen. The IRS here does concede that the rule, quote, does alter the conditions under which a tax return preparer can represent a taxpayer before the IRS. That's all we need. The agency also said that the right of representation that you were referring to was revoked, not in this current proceeding, but in the previous rulemaking, part of which was enjoined. Well, Your Honor, the prior rulemaking was permanently enjoined in almost its entirety in the Loving case. Well, the Loving case says the scheme of burdening required the overall scheme, which was to require everyone to get qualified, was enjoined. The Revenue Service seems consistently to have understood that, not to impair their part revoking representation right because the CFR kept it. Did they not restore that to the CFR? Well, Your Honor, let me make four points, if I may. Four points? Yes, four, because I've got a lot. For starters, there are lots of things that the IRS has left in Circular 230. For example, they have another injunction under Ridgely v. Lu. They didn't take that piece out either, so there's nothing there. Secondly, Your Honor, they don't consistently say that anything was left after Loving. They say, for example, that the 2011 rule was invalid at Joint Appendix 84. They say at 396 it's no longer in effect. 403, again, they say it's invalid. So it's an invalid rule, and it can't, therefore, have any ongoing life to do anything. But my third point, Your Honor. But the injunction, it's clear that, I mean, pardon me, the statement by the district court is not entirely clear. But it does, in talking about enjoining the scheme, the rationale for that is the burden that was placed on everybody, not the revocation of the rights. No, Your Honor. I think what the district court said, if you look at the ordering clause, it enjoins the entire program, except for, it wants to be clear, it's not blowing up the P-10 part of it, which is separately authorized by Congress, and it's saying maybe there can be some indication. This is a factual question. What has been the practice for the agency in the ensuing, whatever it is, several years? Have unenrolled preparers been appearing before the agency? Your Honor, I don't think the record speaks to that. I think that some unenrolled preparers have complied with the rules. Some unenrolled preparers have taken the consequences of not complying. But my third point, Your Honor. I see. So what I was thinking of is between the two rulings, after the injunction was issued. Right. And the CFR is not amended a second time. Right. A sub-8 was pulled out, not put back in. I don't know what the practice was, but they had the right, in our view. But, again, Your Honor. My third point. How about your employees, the employees that you had who were unenrolled? They had. Where in the complaint, where in the record do we know that they were representing folks before they? Your Honor, I don't think that that's in the record. Okay. Though we do have in the complaint that we employ these people. That you employ them. We employ them. But what I'm getting at is did they exercise this right to represent people before the IRS? That's right, Your Honor. But the fact of the matter is they had the right to do it. And what the IRS has done is taken it away and said you can have it back again. But that doesn't affect you if none of your people were doing it. No, Your Honor. It would affect us if part of our business model was we have the ability to provide a tier of service that costs less, because it only uses unenrolled preparers. This goes back to the first ruling in this case, Your Honor, where you looked at Shirley versus. Were you using unenrolled preparers to represent people? Your Honor, I can't say that we were. Okay. But I can say that for purposes of demonstrating that we satisfy the zone of interest test, what we have before you is enough. If I can go back, Your Honor, to finish my answer to your question about whether or not it's the 2011 rule that takes out the right to practice. Ultimately, it doesn't matter whether it's the 2011 rule or whether it's 8138 or whether it's the 2014 rule. The 2014 rule says we're taking it away, so they seem to think that they had to do it again. So I think the 2014 rule, when you look in Section 6, Your Honor, that says we're going to take it away. So, you know, I think, Your Honors, it's clear we satisfy the zone of interest test. I'd like to get to the second issue, which is simply a very straightforward question about whether or not this rule was adopted consistent with the APA. I'm sorry. I need to back up a little bit. Help me think. Help me think this through. Isn't your stronger standing argument the sort of supervisory liability that comes with Circular 230? Well, Your Honor, that is certain. You didn't lead with that. Maybe I'm missing something. I didn't lead with that because I thought the other argument was simpler. But certainly we do have the argument that goes like this. Prior to this rule, unenrolled tax preparers were not subject to Circular 230. This rule says if you want to get back your rights that were otherwise taken away from you, you have to consent, kind of an odd word, consent to be subject to Circular 230. Circular 230 also says that the owners of the firms have supervisory duties to make sure people comply with Circular 230 as applicable. So if it doesn't apply to unenrolled tax preparers. And they can be disciplined, right? Right. Disciplined. And so if Circular 230 doesn't apply to unenrolled tax preparers, as it would not in the absence of this rule, we wouldn't have that risk as well. You're right. So on the second issue, it's clear. Our colleagues concede that what we have here is a rule under the APA. They just don't think it's a legislative rule. I think it clearly is a legislative rule that changes. Why wouldn't we, if we agreed with you on the standing, why wouldn't we just remand to the district court so they could take a look at this in the first instance? Why would we reach the merits? No one has yet. Is it our general rule that we let the district court reach merits before we do? Well, Your Honor, there is a general rule of that. But in Mendoza, very similar, this court went on. I submit that this is a fully appropriate case where you should reach the merits because the merits are clear. The standard review is going to be pro de novo in any event. There is ongoing harm right now under all of the theories that we have advanced. There's going to be waste of judicial resources. And, Your Honor, the very experience that this court has had with this case, if you send us back, we're going to be back in two more years. And, Your Honor, I think here, when you look at the fact that there wasn't notice and comment rulemaking, under the Sugar King case, it says the utter failure to comply with notice and comment cannot be considered harmless if there's any uncertainty as to the effect of that failure. So I submit that that is the rule that should apply here. It's very clear there was no notice and comment. We think it's equally clear that they acted in excess of statutory authority as set forth by this court in Loving and that, therefore, the court should reach the merits and vacate. I'll reserve the rest of my time if I may. Thank you. Counsel for Appellees. Thank you. May it please the Court. Most tax cases have complex statutes and detailed technical rules and mind-numbing complexities. That's not this case. It's a question of statutory interpretation or what used to be called prudential standing. We're not talking about the zone of interest. And I'd like to start by disagreeing that employer, I'll use the word standing, employer standing works because this court in Mountain State said that whatever the standing is that gives you Article 3, and this court in the first appeal said that was competitor standing, is also the same standing for a zone of interest. So I think employer standing is really not before the court. I think it's only competitor standing. As we pointed out in our brief, we don't think, even though the zone of interest Are you saying they didn't argue employer standing? No, they argued employer standing, but under this court's precedent, that will not work. It will not work because this court in Mountain State said, okay, Article 3 standing, and then you move on to what it termed zone of interest. And it said the method by which you get Article 3 standing, that has to be the same as what you use for zone of interest. So if you're standing for Article 3 as competitor, which it is here, then that's your standing for zone of interest. Maybe I misunderstood. I thought the argument, this is an alternative argument to competitor standing. But this is an argument simply as an employer, they have new responsibilities they didn't have before, and that grants them standing. They sought Article 3 standing, I think, on three grounds. And the district court reached only one. Well, the district court first time said no standing on Article 3. The court of appeals reached only one. And did not comment on the other two. Exactly. So that is still open for the court of appeals to say, well, the district court erred with respect to ground number two. There are many options for this court. One option would be, okay, if you accept our view that there is no zone of interest under competitor, but we never addressed employer, it could remand and say, okay, district court, we think there's also Article 3 standing on employer, and now you have to address zone of interest under employer. Or we could just go on and do it ourselves. You could go on and do it yourself. Everything you said about the basis for zone of interest has to be the same as it was in the previous decision regarding Article 3 standing is beside the point. Well, it's not really beside the point because this court has not held thus far that there is Article 3 employer standing. All right. So let me ask you this. Taking your view of Mountain States, why does competitor standing not suffice here in terms of zone of interest? Well, the whole point of the zone of interest, and this court discussed that at length in liquid carbonic, is that you don't get to be zone of interest just because you may be interested in or affected by an agency's decision. Rather, you have to be either protected by the substantive statute, which would be 31 U.S.C. Nobody's suggesting that here. All right. Or you have to be benefited by, or you have to be regulated by. And we don't think And where does competitor standing come in? Competitor standing generally comes in on kind of market entry type decisions. So you argue that this is not that type of situation? This is not that because the substantive statute has to do with what are the conditions IRS can impose when you have representation. And the statute was enacted 130 years ago. So they're seeking to close the market as to who can appear in a representational capacity. The 31 U.S.C. 330 is essentially a taxpayer protection statute. It was to protect against sharks. I guess that word would keep using that when lawyers are old. But anyway, that's what the statute is designed to do. And what the institute wants to do is exactly the opposite. They want to make it harder for the taxpaying public to know which preparer knows what they're doing. So they're not seeking a more strict limit. They're seeking a more lax limit, like we don't want anybody to let anybody know whether a preparer is or is not, even on a voluntary basis, has taken the educational opportunities and know what the tax law says. I mean, I think in terms of zone of interest, I mean, if the institute is right under its theory of who qualifies to challenge this particular program, then the institute presumably would have a right to say, okay, IRS, I don't want you to issue publication 17 anymore. Well, but its argument here is that the agency has exceeded its statutory authority. Now, whether it's right or wrong, why doesn't competitor standing bring it within that zone? Because in order to have competitor standing, the idea is that you're bringing the lawsuit because you want to, quote, patrol a statutory picket line, kind of a line demarcation. Yeah, IRS can't do this. But you have to be within, you have to be what Congress said, okay, when they passed the APA, they didn't say every citizen gets to challenge anything an agency does. And that's the whole point of the zone of interest. No, I'm with you on 330. That's where I am. I'm sorry? I say I'm with you on 330. I'm not in the APA. So, but, again, this court on at least four occasions I've looked at has said, okay, this litigant has Article III standing, but you've flunked the zone of interest. Don't you have to make an argument that 330A is not the type of, doesn't draw the type of boundaries that the other statutes have when we've looked at competitive imagery here? I thought I was doing that. I must not have. But, yes, that would be our position. This is not comparable to those other cases. And why isn't it? Why? Well, we think, because the best example. The boundary here, the line of demarcation here is between representation and preparation, right? I mean, there is a line that's drawn. Right. You cannot represent a taxpayer unless you've gone through this voluntary program or you're a secretary. And as I understand it, the Institute's argument is, no, we're policing that boundary here. And our position is they're not the proper party to police that boundary. They're not within the, in other words, the best example would be the types of cases which this court says, you have Article III standing, but you don't meet the zone of interest. There's a case like Liquid Carbonic about 20 years ago where it said, when the court said you have no, you don't meet the zone of interest, it says, your interest has nothing to do with the energy conservation goals of the relevant statute. We think the Institute has nothing to do with the taxpayer protection position that 31330 does. That's why we think, even though the zone of interest is a very liberal type of, you know, prudential standing, it's not meaningless, and that's what the court said. The argument that they've made directed to consumer protection is that the program you're operating misleads consumers about real qualifications or induces people to use, you know, your listed tax preparers when, instead of using the CPA, for instance. That's the consumer confusion argument. It's different than the employer supervision. Right, that is different. But they have put forward an argument that does, is rooted in the consumer protection idea. Well, the idea behind the voluntary program is let's give the taxpaying public some idea as to which preparers might be better positioned to do your return than other preparers. And that was the impetus behind the whole voluntary program after this court's decision in Ludden. And we don't see how it benefits the taxpaying public to have less information than they have now. At least now, even though only about 11% of the unenrolled preparers have complied with the voluntary program, at least there are, you can go on IRS's website and say, okay, what are the attorneys within my area code? What are the CPAs within my area code? What are the enrolled agents? There's also a button that has any, are any preparers, have they undergone this education and so forth? And it seems to me that is. And let's suppose their position, maybe adding a little bit to it, is, well, that qualification isn't worth a darn. It misleads consumers. The real qualification is being supervised by a CPA, and that's what we do. Well, it seems to me that they're not, it seems to me that they're not in, they're not positioned to make a judicial challenge. They want the judiciary to step in and say, agency, you didn't do it right. Okay? The point we think, and the point of our whole beginning of the brief, is that you're not positioned, the Institute is not positioned to do that. There may be other parties who may, but not the Institute. Okay, well, what if unenrolled preparers, individuals or a group of them, had brought a challenge on the ground that they're burdened by this thing and their competitors, they're not taking the test and their competitors are getting a credential which is misleading or whatever the argument is. Would they be more suitable parties? Yes. They are employed by these people. This is an Institute, it's a membership organization, I think, which has CPAs in it. But the Institute, in order to find the zone of interest, it is the members, the members of the CPAs, it's not their employer, and I'm sorry, not their employees. That is not, you don't measure zone of interest by anybody further down the chain. I hope we made that clear in our brief. If consumers are going outside to other vendors because those vendors have a certificate, and these people employ equally, in their view, equally qualified vendors who are better supervised, I'm not sure why, ultimately the CPAs who lose the business, right, and who suffer from the consumer confusion, and the consumers who, if they're confused, they're confused, so I don't see why it matters whether it's the employer or their employees. Well, we do not think zone of, when you're talking about a membership organization like the plaintiff here, that it's the members, okay, do the members have a zone of interest? The members, whether the members' employees have a zone of interest is not. So if we have the Sierra Club here, another membership organization, and they say our members' children use these facilities that are not being adequately protected. We don't, but it's a playground, but our children do. That's not adequate? That's not, I don't think that plays into the zone of interest. I mean, I think the zone of interest, when you're talking about an organization of CPAs, it's the members. I mean, I'm pretty sure we explained that in our brief. Well, what the district just said was that they weren't a suitable plaintiff, but the implication was, and she almost said they might be better suited. I mean, do you say, yes, it's their employees, that's your answer? No, my answer is a suitable plaintiff, as I answered your question, I think an unenrolled preparer, if that had been a plaintiff, then I think they would have passed as unenrolled. Including an unenrolled preparer who works for a CPA. That's not the plaintiff. No, no, you're saying, well, that would be okay. Yes, because I think they would have. It's a pretty thin distinction. Well, I mean, zone of interest is, I wish there was a black and white rule, but it's a fairly liberal standard, but it's not meaningless. And, again, there's a larger question here. Because, I mean, the question is, under the APA, who gets to challenge agency action? And the whole point of Article III standing and zone of interest is, you've got to have the proper party, or else anybody that says, I don't like what the Department of Labor did, I'm going to file a lawsuit. The point is, you don't let that person file a lawsuit just because they don't like what something the Department of Labor did. So that's the point of the zone of interest. And we indicate in our brief that it's not an especially demanding standard, but it's not meaningless. And this Court, on at least four occasions, has said, okay, this plaintiff has Article III standing, but it doesn't have zone of interest standing. And we think the closest case to ours would be the one I mentioned, liquid carbonic, because there the interest of the plaintiff was directly at odds with the interest that the statute was designed to do. And the statute here is designed to benefit the public by making it more visible as to which preparers might be better. And the Institute is seeking to shut that program down. That, to me, does not benefit consumers and runs directly contrary to what Congress had in mind back in 1884. Now, again, if the Court wishes to address the merits, we have discussed the merits in our brief, but the general rule is that you would remand the district court if you get to the merits. Are there any further questions? No, I guess not. Thank you. Thank you. Counsel for Appellate. Thank you, Your Honor. I have several quick points to make. For starters, with respect to the Mount States argument, you are exactly right, Judge Ginsburg, that this Court in the prior decision in this case said we're going this far and no further and that we don't need to reach the other issues. It seems to me that that takes care of that. It's also the case that when we were litigating the issue of the zone of interest below that the IRS never said that we had waived or could not make our argument about standing based on employers. Judge Griffith, you are right that we do argue quite clearly that we are within the zone of interest if we need to be for purposes of Section 330 as competitors because we are enforcing the demarcation that this Court enforced in Loving between people who are representatives, who practice before the IRS, and other persons, including tax return repairs, who do not. Did you argue... I don't recall, frankly, whether this was your thought or mine. Did you argue that you are... this is indeed a restricted-entry case? Well, Your Honor, that's a category that they introduced. We think it is a restricted-entry case in the sense... It's restricted-entry, essentially. Right. We think it is a restricted-entry case in the sense that the rule is changing the marketplace. We think it's very much like Shirley. We think it's like scheduled airlines in that respect. And on consumer confusion, could you just remind us all, as briefly as possible, what's your best claim, that this, in fact, involves consumer confusion? Right. Consumer protection? Right. We have two arguments. One is consumer protection. The other is consumer confusion. Consumer protection purpose is that we think that this unlawful rule distorts the marketplace. It's intended to distort the marketplace. And it's important, Your Honor, to linger over that for a moment because in Loving, this Court said, you can't regulate unenrolled tax preparers. But in their briefing here, and we've just heard from my colleague, they intend to inform the public about tax return preparers. They can't do that under Loving. So in terms of consumer protection, we think that having an unlawful rule that distorts the marketplace is bad for consumers. And we also think that under the notion that the consumers are going to be confused. So hold on just a moment. Your argument is it distorts the marketplace and they can't regulate these unenrolled preparers. And their response is, I guess it gets to the merits is the problem, doesn't it, as to whether they have the authority. But in any event, you say... The protection part is, and I just need to be clear about this because I thought the district court thought you overlooked this conflict, namely that IRS wants to say these are preparers who have completed some education. And therefore, we're going to give them a piece of paper that says they have, and we're going to put them on our website listing. And they will stand out as compared to preparers who have not had this education. Why is informing the consumers of that... I guess I should say, why is not informing consumers of that in the interest of consumers? Your Honor, the way you ask the question, I think you are getting into the merits because this, again, is the zone of interest test. But sometimes in standing, you do have to look at the merits. You're right, Your Honor. But as the Supreme Court recognized in the NCUA case, people who challenge unlawful agency action often can be mischaracterized as acting out of their selfish economic interest. I'm not getting at that. Okay. And I understand for purposes of standing, we assume you prevail on the merits. Right. But I'm just wondering how it's in the public interest not to give them information. Your Honor, it's in the public's interest not to have them give information that exceeds the authority Congress gave. You've already said in Loving they can't supervise the tax relief. Ah, because you say this is regulation. Well, Your Honor, it is not just I who say it is regulation. They say it, and you heard in the discussion today, it's not about standing up in front of the IRS. It's about we want to change and control the tax return market. And the tax return market is not what Congress gave them authority in Section 330. Your Honor, two other quick points. My colleague several times pointed to the liquid carbonic case. We do deal with it on our brief at page 26. It deals with second-tier competitors. I don't think it has any relevance here. I think when the question is regulation of tax return preparation. Can I just ask you, I mean, I thought Judge Ginsburg's question went to this is sort of second level. You employ these people. Your members employ these people. Your Honor, we're not second level in the sense it's used in liquid carbonic because these are people who don't compete. They're another step removed. All right. So, Your Honor, I think just to wrap up the Zona Gunders question, I think that... And you were going to talk about consumer confusion. Right. I think that I did. Is that our view... I interrupted you. Okay, fine. Let me go back and make sure I get my answer out. Is that we think that having this new credential will confuse consumers. And, indeed, for purposes of the zone of interest test, again, that's not a very high hurdle, you go back and look at what this Court already said in the earlier iteration of this case, you said, of course, this new credential is going to affect the marketplace. That's what it's intended to do. And, indeed, the IRS has said that many times. I understand that. But consumer confusion, how does the new credential confuse me? Your Honor, because the IRS is standing up and saying... They took these courses. And they have a gold star from the IRS, the agency that's going to be looking at your tax return and maybe assessing a penalty against you. And I think for the zone of interest test, that's enough. All right. Then, Your Honor, I think the last thing I would like to touch on is my colleague referred to the rule as voluntary. We obviously don't think it's voluntary. I think if you look at the rule, it clearly is not. If a preparer does not comply with a new rule, he or she not only faces new competition from those who have gone ahead and gotten this new credential we've been discussing, but also loses the current rights to appear before the IRS. Those who do comply agree to be regulated in an intrusive and coercive way in all of their functioning, not simply standing up in front of the IRS, but in preparing tax returns in the quiet of their office. And being compelled to pick your poison, as I said earlier, does not make this rule voluntary. The Chamber of Commerce v. Labor case from this circuit in 1999 makes that plain. And I think you also should take a look at the sugarcane case where the court says in a footnote, the agency argument that a program analogous to this one was voluntary, quote, is not worth a response. That was sugarcane? Yeah. Sugarcane, yes. In a footnote. It's at page 96 of the Reporter Note 6. So what year? What year? Sugarcane was in question. I'm sorry? Okay. Anything further? No, Your Honor. I'm done as soon as I give you the year of the decision. All right. We'll find it. Thank you. Thank you. We will take the case under advisement.
judges: Rogers, Griffith, Ginsburg